IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN UNDERWOOD, # 167873,     )
                                            )
      Petitioner,             )
                                            )     CIVIL ACTION NO.
v.                                 )     2:18-cv-891-MHT-CSC
                                            )         (WO)
DEWAYNE ESTES, *et al.*,      )
                                            )
      Respondents.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is a petition for writ of habeas corpus under 28 U.S.C. § 2254 filed on October 11, 2018, by John Underwood, an Alabama inmate proceeding *pro se*. Doc. 1.[1] Underwood challenges his 2000 Autauga County convictions for first-degree robbery and first-degree theft of property. For the reasons discussed below, the Court finds that Underwood's petition should be denied without an evidentiary hearing and that this case should be dismissed with prejudice.

## I.   BACKGROUND

In November 2000, an Autauga County jury found Underwood guilty of first-degree robbery and first-degree theft of property, violations of ALA. CODE §§ 13A-8-41(a) (1) and 13A-8-7, respectively. Doc. 9-1 at 24–25. On December 13, 2000, the trial court

---

[1] References to "Doc(s)." are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

sentenced Underwood, as a habitual offender, to life in prison without the possibility of parole on the robbery charge. *See* ALA. CODE § 13A-5-9(c)(3). Doc. 9-1 at 514.

Underwood appealed, arguing that the trial court erroneously denied his motions for judgment of acquittal because the State presented insufficient corroborating evidence to support his convictions based on the testimony of his codefendants. Doc. 9-3. In an opinion issued on September 28, 2001, the Alabama Court of Criminal Appeals rejected Underwood's claims and affirmed his convictions. Doc. 9-11; *see Underwood v. State*, 834 So.2d 819 (Ala. Crim. App. 2001). In its opinion, the Alabama Court of Criminal Appeals summarized the trial evidence as follows:

### I.  First–Degree Theft of Property

On November 8, 1999, perpetrators broke into the Thweatts' house in Prattville and stole, among other things, assorted jewelry, a pistol, and a trumpet. Brandon Cargile, Underwood's codefendant, testified that the theft was Underwood's idea, and that Underwood broke the window in the door in order to gain entry to the home. Cargile testified that he and Underwood committed the theft and that they then walked down the street to a grocery store. Cargile testified that he waited in the parking lot with the stolen goods while Underwood retrieved his girlfriend's car and picked Cargile up.

The State also presented evidence that, on November 25, 1999, Officer Ron Boles arrested Underwood at the Relax Inn in Montgomery. Boles testified that, at the time Underwood was arrested, his girlfriend was in the hotel room and she was wearing a high-school class ring inscribed with Mrs. Thweatt's maiden name. At trial, Mrs. Thweatt later identified the ring as the one stolen from her home. Underwood's girlfriend consented to the search of her vehicle. In her vehicle, the police found a trumpet, which Mr. and Mrs. Thweatt identified at trial as having been stolen from their home. Officer Boles testified that, from Underwood's girlfriend's car, he also recovered a box filled with other articles, including jewelry and Christmas ornaments, that the Thweatts identified at trial as items stolen during the burglary of their home.

Additionally, Officer Boles testified that, upon his arrest at the Relax Inn, Underwood assured Officer Boles that he could recover the missing pistol. Underwood was released on bond to allow him to recover the pistol. A few days later, Clemon Motley saw Officer Boles in his neighborhood, approached Officer Boles, and told him that Underwood had come to his home and attempted to sell Motley a pistol. Officer Boles met with Motley and set up a controlled transaction between Motley and Underwood. Officer Boles gave Motley $100 in cash, which Officer Boles had photocopied, to purchase the pistol from Underwood. The next day, Motley paged Officer Boles to inform him that Underwood was on the way to Motley's to sell the pistol. Motley purchased the pistol from Underwood and immediately paged Officer Boles again to inform him that the transaction was complete. Driving to Motley's home, Officer Boles spotted Underwood walking down the street. Underwood had in his possession $40 of the money Officer Boles had provided to Motley; he was rearrested. Motley turned the pistol over to Officer Boles. At trial, Officer Boles identified the marked money and the pistol recovered from Motley; Motley and his girlfriend testified about the controlled transaction and identified the pistol; and Mr. Thweatt identified the pistol as the one stolen from his home.

\* \* \* \* \*

## II.  First–Degree Robbery

In the evening of November 20, 1999, Eva Pierce was working as a clerk at the Big Bass Store in Autauga County. Two men entered the store and, at gunpoint, took money from the register, stole Pierce's purse, and ripped the telephone out of the wall before leaving.

The codefendants' testimony varied. Cargile testified that he, Underwood, Demeko Powell, and Travis Powell went to Big Bass, but that Underwood did not go into the store and commit the actual robbery. Cargile also testified that, although the Powell brothers committed the robbery while he and Underwood waited in the car, the robbery was Underwood's idea, that Underwood provided the gun, and that Underwood drove the perpetrators to the store in his girlfriend's car. Demeko Powell testified that he drove Underwood's girlfriend's car to Big Bass, that Underwood provided the gun, and that he and his brother, not Underwood, went into the store and committed the robbery.

At trial, Eva Pierce identified Underwood as one of the robbers who entered the store. Pierce testified that she got a good look at the robber's face

and that she was "fairly sure," that is, 80% to 95% sure, that Underwood was one of the robbers who entered the store.

*Underwood*, 834 So.2d at 821–22.

The Alabama Court of Criminal Appeals held that the State presented sufficient corroborating evidence of Cargile's and Powell's testimony to support both of Underwood's convictions. 834 So.2d at 822–23. Despite affirming Underwood's convictions, the Alabama Court of Criminal Appeals remanded his case to the trial court for resentencing, because the record reflected that the trial court had neglected to sentence Underwood for the theft conviction. *Id.* at 820, 823; *see* Doc. 9-11.

On November 20, 2001, the trial court sentenced Underwood, as a habitual offender, to 20 years in prison for the theft conviction. *See* ALA. CODE § 13A-5-9(c)(2). On January 25, 2002, on return to remand, the Alabama Court of Criminal Appeals affirmed the trial court's judgment. Doc. 9-12. Underwood's application for rehearing was overruled by the Alabama Court of Criminal Appeals, and his petition for writ of certiorari was denied by the Alabama Supreme Court. A certificate of judgment was issued on May 17, 2002. Doc. 9-13.

Almost 15 years later, on February 13, 2017, Underwood filed a petition in the trial court seeking post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. Doc. 9-2 at 6–22. In his petition, Underwood claimed that newly discovered evidence existed that required that his convictions be vacated. Specifically, Underwood

asserted that his codefendant Brandon Cargile[2] had recently recanted his trial testimony implicating Underwood in the crimes. Doc. 9-2 at 15–22. Underwood argued that his convictions were illegally obtained through the perjured testimony of Cargile, who was purportedly coerced by the prosecution and law enforcement officials to implicate Underwood in the crimes. Doc. 9-2 at 15–17. The State answered that Cargile's alleged recantation did not amount to newly discovered evidence under Rule 32.1(e) of the Alabama Rules of Criminal Procedure.

On August 15, 2017, the trial court held an evidentiary hearing at which Cargile and another codefendant, Demeko Powell, testified they had testified falsely at Underwood's trial.[3] Doc. 9-2 at 71–118. The trial court also heard testimony from former prosecutor Glen Goggans and Officer Ron Boles, who Cargile claimed had coerced him into testifying falsely against Underwood. Following the evidentiary hearing, the trial court denied Underwood's Rule 32 petition. Doc. 9-2 at 61.

Underwood appealed, and on April 20, 2018, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's denial of Underwood's Rule 32 petition. Doc. 9-5. Underwood's application for rehearing was overruled (Docs. 9-6, 9-7), and his petition for writ of certiorari was denied by the Alabama Supreme Court (Docs. 9-8, 9-9). A certificate of judgment was issued on August 10, 2018. Doc. 9-10.

---

[2] In the record, Cargile's last name is spelled variously "Cargile" and "Cargill." His inmate information at the Alabama Department of Corrections' website lists his last name as "Cargill." However, this Recommendation will use the spelling "Cargile," the spelling that appears most often in the trial record and the opinions of the Alabama Court of Criminal Appeals.

[3] Underwood was represented by appointed counsel at the evidentiary hearing.

On October 11, 2018, Underwood filed this petition for writ of habeas corpus under 28 U.S.C. § 2254.[4] Doc. 1. In his petition, Underwood argues he was denied due process and a fair trial because the State obtained his convictions by using the perjured testimony of his codefendants Cargile and Powell. Doc. 1 at 9–10.

Respondents counter that Underwood's § 2254 petition is time-barred by the one-year statute of limitations in 28 U.S.C. § 2244(d) (Doc. 9 at 4–5) and that, even if Underwood's petition is not time-barred, his petition is subject to denial on the merits because the state court's adjudication of his claim did not result in a decision contrary to, or involving an unreasonable application of, clearly established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented the state court proceedings (Doc. 9 at 5-8).

## II.   DISCUSSION

### A.   AEDPA's Limitation Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a one-year statute of limitations for filing a § 2254 petition. Title 28 U.S.C. § 2244(d) of AEDPA states:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[4] Although the petition was date-stamped as received in this court on October 18, 2018, Underwood represents that he signed the petition on October 11, 2018. Doc. 1 at 8. Under the prison mailbox rule, the court deems Underwood's petition to be filed on October 11, 2018.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under § 2244(d)(1)(A), a state prisoner's conviction is final at "the conclusion of direct review or the expiration of the time for seeking such review." *Pugh v. Smith*, 465 F.3d 1295, 1298 (11th Cir. 2006) (quoting § 2244(d)(1)(A)). As noted above, the Alabama Court of Criminal Appeals affirmed Underwood's convictions on direct appeal and denied rehearing, the Alabama Supreme Court denied certiorari, and a certificate of judgment was issued on May 17, 2002. Therefore, Underwood's conviction became final on or about August 15, 2002, upon the expiration of the 90-day period for him to seek review in the United States Supreme Court. *See Bond. v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002); *Pugh*, 465 F.3d at 1299. Accordingly, the limitation period under § 2244(d)(1)(A) began running on August 15, 2002, and, as no tolling events occurred in the year that followed,

expired one year later, on August 15, 2003. Thus, if relegated to § 2244(d)(1)(A), Underwood's petition, which was filed on October 11, 2018, is unquestionable untimely.

Underwood implicitly argues that the triggering date in 28 U.S.C. § 2244(d)(1)(D) applies to his claim and that the AEDPA statute of limitations should run from the date on which he says he learned that a friend obtained an affidavit from codefendant Brandon Cargile in which Cargile recanted his trial testimony implicating Underwood in the crimes. Doc. 1 at 9–10. According to Underwood, he first learned of Cargile's recantation "[o]n or about September 11, 2016."[5] Doc. 1 at 9. Under § 2244(d)(1)(D), the one-year limitation period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The limitation period under § 2244(d)(1)(D) starts when the new evidence was discoverable through the exercise of due diligence, not when the new evidence was actually discovered. *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), *vacated on other grounds*, 561 U.S. 1001 (2010). In this context, due diligence "does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts. Moreover, the due diligence inquiry is an individualized one that 'must take into account the conditions of confinement and the reality of the prison system.'" *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002) (citations omitted).

"Multiple courts have held that a witness's recantation can serve as the factual predicate from which the limitations period begins to run." *DiCaprio-Cuozzo v. Johnson*,

---

[5] Underwood attached Cargile's affidavit to his Alabama Rule 32 petition. Doc. 9-2 at 20-22. In the affidavit, Cargile averred that the affidavit was completed on September 9, 2016. Doc. 9-2 at 22.

744 F. Supp. 2d 548, 557 (E.D. Va. 2010) (collecting cases); *see, e.g., Cooper v. McDaniel*, 2013 WL 1315079, at \*8 (D. Nev. Mar. 28, 2013) ("Knowledge of Wells' recantation was not available to petitioner until Wells signed the declaration recanting his trial testimony on July 30, 1997. The factual predicate of [petitioner's] claims . . . could not have been discovered by petitioner until July 30, 1997. This triggered a new one-year statute of limitations under § 2244(d)(1)."); *U.S. ex rel. Daniels v. McAdory*, 2004 WL 906013, at \*4 (N.D. Ill. Apr. 27, 2004) ("Daniels became aware of the factual predicates for his claims the day Rollins executed an affidavit recanting his identification testimony at Daniels' trial. . . . Under § 2244(d)(1), the time for filing a habeas petition in federal court expired one year later.").

Because it does not appear that Cargile's recantation was discoverable by Underwood at some earlier time through the exercise of due diligence, the Court finds Underwood first had notice of the factual predicate for his claim on September 11, 2016, the date on which Underwood says he learned that a friend had obtained an affidavit from Cargile recanting his trial testimony. Applying § 2244(d)(1)(D), the limitation period for Underwood to file his § 2254 petition began running on September 11, 2016. Section 2244(d)(2) of the AEDPA provides for the tolling of the limitation period pending state court review of a properly filed application for post-conviction relief. *See In re Hill*, 437 F.3d 1080, 1083 (11th Cir. 2006). For Underwood, the limitation period ran for 145 days— from September 11, 2016, until February 13, 2017, when Bowman filed his Rule 32 petition. As discussed previously, the Alabama Court of Criminal Appeals affirmed the trial court's denial of the Rule 32 petition and denied rehearing; the Alabama Supreme

Court denied certiorari; and a certificate of judgment was issued on August 10, 2018. On that date, 220 days (365 days minus 145 days) remained on the AEDPA clock for Underwood to file a § 2254 petition presenting his claim. Underwood filed his § 2254 petition on October 11, 2018—62 days after August 10, 2018. Therefore, under 2244(d)(1)(D), his § 2254 petition is timely.

Because the Court finds the triggering date in § 2244(d)(1)(D) applies to Underwood's claim, Underwood's § 2254 petition is timely filed, and his claim is not time-barred by the AEDPA statute of limitations. Accordingly, the Court will assess the merits of Underwood's claim.

## B.   Merits of Underwood's Claim

Respondents argue that even if Underwood's petition is not time-barred, his claim should be denied on the merits, because the state court's adjudication of the claim did not result in a decision contrary to, or involving an unreasonable application of, clearly established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings. Doc. 9 at 5-8.

### 1.   AEDPA Standard of Review

The AEDPA imposes "a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (quotes and cite omitted). This court cannot disturb state court rulings on fully adjudicated issues unless they

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a highly deferential, "difficult to meet" standard that petitioners must overcome. *Harrington v. Richter,* 562 U.S. 86, 102 (2011); *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (quoted in *Hill v. Humphrey*, 662 F.3d 1335, 1345 (11th Cir. 2011) (en banc)).

And "§ 2254(d) applies even to summary state court opinions, as well as to opinions that do not cite Supreme Court precedent." *Means v. Sec'y, Dep't of Corrs*., 433 F. App'x 852, 853 (11th Cir. 2011) (citing *Harrington*, 562 U.S. at 98–99). So, if a state court's decision is unaccompanied by any legal analysis or explanation, the petitioner must still show there was no reasonable basis for the state court to deny relief. *Johnson v. Sec'y, Dep't of Corrs.*, 643 F.3d 907, 930 n.9 (11th Cir. 2011). This court also must presume state court factual determinations to be correct; petitioners must rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## 2.      Newly Discovered Evidence: Witness Recantation

Underwood argues he was denied due process and a fair trial because, he says, the State obtained his convictions through the use of perjured testimony from Brandon Cargile and Demeko Powell, both of whom, over 15 years after of Underwood's trial, recanted their testimony implicating him in the crimes for which he was convicted. Doc. 1 at 9–10. As he did in his Alabama Rule 32 petition, Underwood presents this matter as a claim of newly discovered evidence. Doc. 1 at 9.

At the evidentiary hearing on Underwood's Rule 32 petition, Cargile testified that, contrary to his trial testimony, Underwood was not involved in the robbery or the burglary. Doc. 9-2 at 78–79, 87–88. According to Cargile, he was "offered a deal" by the State to testify against Underwood in exchange for receiving youthful offender status and a suspended sentence a suspended sentence for his own involvement in the crimes. Doc. 9-2 at 75–76. He agreed to testify against Underwood, he said, because his mother was sick with AIDS and he thought he would never see her again if he did not take the deal. Doc. 9-2 at 77. He testified that Officer Ron Boles coerced him into lying to implicate Underwood in the crimes and "to say certain things that didn't even occur." Doc. 9-2 at 76–77, 79, 85. Cargile acknowledged that he specifically testified at Underwood's trial that no one had threatened him, but he stated he falsely implicated Underwood because Officer Boles told him it was the only way he would receive the deal. Doc. 92 at 76–77, 85–86. Cargile testified that he came forward with his recantation because "it's what's right"; he stated he felt Underwood was serving a life sentence "because of me." Doc. 9-2 at 78.

Powell testified at the evidentiary hearing that his trial testimony implicating Underwood was untrue and that he only testified to such because Underwood had implicated him in another robbery, and that he lied "out of anger." Doc. 9-2 at 93–94. Powell stated that he came forward with his recantation because he'd had "a change of heart" about his resentment against Underwood. Doc. 9-2 at 95.

Officer Ron Boles testified at the evidentiary hearing and denied having coerced Cargile into lying at Underwood's trial. Doc. 9-2 at 101. Officer Boles stated that he never promised Cargile he would get youthful offender status if he testified against Underwood and that youthful offender status was not even something he could give a defendant or recommend in a case he investigated. Doc. 9-2 at 102, 105–06.

Glen Goggans, the lead prosecutor at Underwood's trial and now a District Judge in Elmore County testified at the evidentiary hearing that he talked to Cargile to prepare for Underwood's trial, that he did not threaten or coerce Cargile into testifying for the State, that he did not ask Cargile to lie on the witness stand, and that neither he nor any member of the District Attorney's Office offered Cargile any deal, including youthful offender status, in exchange for testifying against Underwood. Doc. 9-2 at 108–10. Judge Goggans testified that he never saw or heard Officer Boles promise Cargile youthful offender status if he testified. Doc. 9-2 at 111–12. Judge Goggans further testified that he did not coerce or promise Demeko Powell anything in exchange for testifying against Underwood, and that he never saw or heard Officer Boles coerce or promise Powell anything. Doc. 9-2 at 112–13.

The trial court resolved Underwood's newly discovered evidence claim in the following way:

> Upon hearing the evidence and testimony, this Court finds as follows:
>
> 1. That the Defendant, Co-Defendant, Brandon Cargill changes his testimony from that given during the original trial in this matter.
>
> 2. That the un-named defendant, Co-Defendant, Demeko Powell testifies and changes his testimony from that given during the original trial in this matter.
>
> 3. That the law enforcement personnel involved testified that there was no promise of Youthful Offender status for one witness and no privilege granted to another for their favorable testimony to include this Defendant in robbery and theft.
>
> Wherefore, the Court finds that there is insufficient evidence or testimony to grant the relief requested and therefore the Petition for Rule 32 relief is denied.

Doc. 9-2 at 61.

On appeal from the denial of his Rule 32 petition, Underwood reasserted his newly discovered evidence claim relating to Cargile's and Powell's recantation of their trial testimony and argued that the trial court abused its discretion in denying his claim. Doc. 9-3. In its memorandum opinion affirming the trial court's judgment, the Alabama Court of Criminal Appeals first set out the standard in Rule 32.1(e) of the Alabama Rules of Criminal Procedure for assessing claims of newly discovered evidence:

> Rule 32.1(e), Ala. R. Crim. P., provides:
>
> "Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
>
> ". . . .

"(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

"(1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

"(2) The facts are not merely cumulative to other facts that were known;

"(3) The facts do not merely amount to impeachment evidence;

"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

"(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received."

*See also Ex parte Ward*, 89 So. 3d 720 (Ala. 2011). Further,

"All five requirements in Rule 32.1(e) must be satisfied in order to constitute newly discovered material facts, and, if all the requirements in Rule 32.1(e) are not satisfied, a claim of newly discovered material facts is subject to the preclusions in Rule 32.2. *See McConico v. State*, 84 So.3d 159, 161–62 (Ala. Crim. App. 2011), and *McCartha v. State*, 78 So. 3d 1014, 1017-18 (Ala. Crim. App. 2011) (both holding that a claim of newly discovered material facts that fails to satisfy the requirements of Rule 32.1(e) is subject to the preclusions in Rule 32.2).

"The requirements in Rules 32.1(e)(1), (e)(2), and (e)(3) are self-explanatory. Rule 32.1(e)(5) requires not that the newly discovered facts actually establish a petitioner's innocence but that the newly discovered facts 'go to the issue of the defendant's actual innocence,' i.e., are relevant to the issue of guilt or innocence, 'as opposed to a procedural violation not directly bearing on guilt or innocence.' *Ex parte Ward*, 89 So. 3d 720, 727 (Ala. 2011). As for the requirement in Rule 32.1(e)(4) 'that the result probably would have been different had the newly discovered evidence been presented to the jury, this calculation must be made based on the probative value of the newly discovered evidence and its relationship to the other evidence presented to the jury.' *Id.* at 728."

*Lloyd v. State*, 144 So.3d 510, 516–17 (Ala. Crim. App. 2013).

Doc. 9-5 at 6–8.

The Alabama Court of Criminal Appeals continued with specific regard to the legal principles for recanted testimony:

Furthermore, this Court has explained:

""""A material error or misstatement in the testimony of the witness for the prosecution may constitute ground for a new trial. . . . But recantation by witnesses called on behalf of the prosecution does not necessarily entitle defendant to a new trial. The question of whether a new trial shall be granted on this ground depends on all of the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. *Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true*." *Henderson v. State*, 136 [135] Fla. 548, 185 So. 625, 630 (1939); *Borgess v. State*, 455 So.2d 488 (Fla. App. 1 Dist. 1984).

"'Further, "the Courts, with their experience with witnesses, generally pay but

16

little regard to the statement of recanting witnesses, and only in extraordinary cases will a new trial be allowed because of recanting statements." *Wallace v. State*, 41 Ala. App. 65, 124 So.2d 110, cert. denied, 271 Ala. 701, 124 So.2d 115 (1960); *See* 158 A.L.R. 1062–1063; *Peterson v. State*, 426 So.2d 494 (Ala. Crim App. 1982); cert. denied, 426 So.2d 494 (Ala. 1983). *See also, State v Scanlon*, [108 Ariz. 399], 499 P.2d 155 (1972); *Best v. State*, 418 N.E.2d 316 (Ind. App. 1981).

"'The general rule regarding the awarding of a new trial based on a recanting witness is that, where independent evidence corroborates the testimony that a witness later seeks to recant, the grant of a new trial rests within the sound discretion of the trial judge. However, when a defendant is convicted solely on the testimony of the now recanting witness, it would be an abuse of discretion not to allow a new trial. *See State v. Scanlon*, supra; *Commonwealth v. McCloughan*, 279 Pa. Super. 599, 421 A.2d 361 (Pa. Super. 1980); *Best v. State*, supra; *Borgess v. State*, supra; *State v. Rogers*, 703 S.W.2d 166 (Tenn. Crim. App. 1985); *State v. York*, 41 Wash. App. 538, 704 P.2d 1252 (Wash. App. 1985).'

"*Robinett v. State*, 494 So.2d 952, 955 (Ala. Crim. App. 1986)."

*M.T. v. State*, 677 So.2d 1223, 1230–31 (Ala. Crim. App. 1995) (emphasis in original)

Doc. 9-5 at 8-9.

Taking the foregoing into consideration, the Alabama Court of Criminal Appeals

then reasoned:

The circuit court did not abuse its discretion when it determined that the evidence was insufficient to grant the relief requested. The circuit court was in the best position to determine the witnesses' credibility. In addition,

17

the State's case did not depend solely on the codefendants' testimonies. The transcript from Underwood's trial indicates that the victim identified Underwood as one of the men who committed the robbery and that other evidence existed connecting Underwood to the theft. Further, "'"[e]vidence tending to impeach or contradict a State witness as to the testimony given upon the trial is generally not such newly discovered evidence as would warrant the granting of a new trial." *Dossey v. State*, 489 So.2d 662, 666 (Ala. Crim. App. 1986).'" *Clark v. State*, 621 So.2d 309, 327 (Ala. Crim. App. 1992), quoting *Midell v. State*, 570 So.2d 820, 822 (Ala. Crim. App. 1990). The codefendants' testimony at the evidentiary hearing merely contradicts the testimony of the victim and other evidence presented at trial. Underwood failed to meet the requirements of Rule 32.1(e), Ala. R. Crim. P. As such, the circuit court did not err in denying Underwood's claim.

Doc. 9-5 at 6–8.

The Alabama Court of Criminal Appeals' reasoning is consistent with established federal law. Although this Court finds no definitive statement by the United States Supreme Court concerning recantation of witness testimony, Justices Brennan and Marshall, in a dissent from the denial of certiorari, expressed the prevailing view among lower courts. *See Dobbert v. Wainwright*, 468 U.S. 1231, 1233–34 (1984) (Brennan, J., dissenting from denial of certiorari) (quoting and citing *Brown v. State*, 381 So.2d 690, 692–93 (Fla. 1980)). Justice Brennan, joined by Justice Marshall, stated:

> Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction. For these reasons, a witness' recantation of trial testimony typically will justify a new trial only where the reviewing judge after analyzing the recantation is satisfied that it is true and that it will "render probable a different verdict."

*Id.*

On this subject, the Eleventh Circuit has repeatedly stated that "recantations are viewed with extreme suspicion by the courts." *In re Davis*, 565 F.3d 810, 825 (2009) (quoting *United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir. 1988)); *United States v. Smith*, 433 F.2d 149, 150–51 (5th Cir. 1970) (quoting *Newman v. United States*, 238 F.2d 861, 862 n.1 (5th Cir. 1956)); *United States v. Dumas*, 280 F. App'x 848, 852 (11th Cir. 2008). Other federal courts of appeals have also viewed recantations with suspicion. *See United States v. Jackson*, 427 F. App'x 109, 112 (3d Cir. 2001) ("Courts have historically viewed recantation testimony with great suspicion.") (quotations and citations omitted); *United States v. Miner*, 131 F.3d 1271, 1273 (8th Cir. 1997) ("Courts look upon recantations with suspicion."); *Spence v. Johnson*, 80 F.3d 989, 997 (5th Cir. 1996) ("recanting affidavits and witnesses are viewed with extreme suspicion by the courts" (internal citation and quotations omitted)); *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) ("It is axiomatic that witness recantations 'must be looked upon with the utmost suspicion.'" (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003))); *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992) ("[N]ew trial motions based on recanted testimony are immediately suspect." (citing *United States v. Ward*, 544 F.2d 975, 976 (8th Cir. 1976)).

The Ninth Circuit has stated that "[r]ecanting testimony is easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." *Jones v. Taylor*, 763 F.3d 1242, 1248 (2014) (9th Cir. 2014) (quotation omitted). "For these reasons, a witness' 'later recantation of his trial testimony does not render his earlier testimony false.' Rather, a

19

witness' recantation is considered in addition to his trial testimony and in the context in which he recanted when assessing the likely impact it would have on jurors." *Id.* (internal citation omitted).

Here, the timing of Cargile's and Powell's recantations—neither of which was corroborated by other evidence—is suspect. Cargile's affidavit was executed over 15 years after Underwood's trial, and Powell did not come forward with his recantation for an equally lengthy time. *See Williams v. Hoffner*, 2016 WL 2937130, at *7 (E.D. Mich. May 20, 2016) ("Harvey apparently did not indicate that he was willing to recant his trial testimony until five years after Petitioner's trial and did not execute his affidavits until 16 years after trial. Such a long delay in coming forward renders his recantation inherently suspect."); *Olson v. United States*, 989 F.2d 229, 232 (7th Cir. 1993) (finding recantation made more than four years after trial testimony to be suspect); *Lewis v. Smith*, 100 F. App'x 351, 355 (6th Cir. 2004) (finding it proper for district court to reject as suspicious a witness' recanting affidavit made two years after trial); *Bates v. Metrish*, 2010 WL 1286413, at *11 (E.D. Mich. Mar. 30, 2010) (finding recantation "suspect and unreliable" because the witness "waited 10 years after the trial to indicate that he was willing to recant his trial testimony and 16 years after trial to execute his affidavit"). Although Cargile testified that he came forward with his recantation because "it's what's right," and he said he felt Underwood was serving a life sentence "because of me" (Doc. 9-2 at 78), he offered no reason for his lengthy delay in recanting. Like Cargile, Powell did not explain the reason for his delay, other than to say that he'd had "a change of heart" (Doc. 9-2 at 95).

Further, Cargile's testimony that he was coerced by Officer Boles into testifying against Underwood and was offered a deal by Officer Boles for treatment as a youthful offender was contradicted by Officer Boles's testimony at the evidentiary hearing that he made no such deal with Cargile and was not even in a position to make a recommendation to the judge. The trial court could have resolved this credibility question against Cargile and, upon finding Cargile not to be credible on this matter, could have determined that Cargile's recantation was not credible in toto. The Alabama Court of Criminal Appeals could reasonably have found no abuse of discretion in the trial court's credibility determinations regarding the recanting witnesses.[6]

Here, the state court's adjudication is entitled to deference, absent a showing that the Alabama Court of Criminal Appeals' adjudication of Underwood's claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence in the state court proceeding. 28 U.S.C. § 2254(d). Underwood has not shown that the conclusion reached by the Alabama state court was incompatible with any factually similar Supreme Court case. Likewise, he has failed to demonstrate that the state court's application of the legal standard was objectively unreasonable or that the findings of fact on which it is based are unreasonable in light of the record evidence. The Alabama Court of Criminal Appeals appropriately viewed Cargile's and Powell's recanted testimony with suspicion, and its findings that other

---

[6] Both Cargile and Powell were convicted and imprisoned for other crimes in the years following Underwood's trial.

evidence corroborated the original trial testimony of these witnesses was not unreasonable. Consequently, Underwood is not entitled to federal habeas relief on his claim.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Underwood's 28 U.S.C. § 2254 petition be DENIED and that this case be DISMISSED with prejudice.

It is further ORDERED that the parties shall file any objections to this Recommendation by **November 4, 2021**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc*., 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 21st day of October, 2021.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE